I wanted to take a moment before turning to the Guidelines, Calculations, Issue and the Kaiser versus Stinson Issue to briefly address the assumed error of heartlessness in court. First, it is the government's burden here to show with certainty that the district court would have imposed the same sentence absent the error. I believe the government falls well short of doing so here. First, this is not a case where the district court made explicit findings on the record that it would have imposed the same sentence. This district court judge knows how to do it. He makes these kinds of findings frequently. And this court has affirmed recently in the last five years a number of these cases under this doctrine where he made explicitly such a finding. So what we know is that the judge is aware. Was the judge admitted to do that? Was the judge required to do that? It's not a requirement, but it's incredibly difficult to find a case in which the court has applied the doctrine where the judge has not made such a specific finding. And I think the answer lies in... Okay, so the court wasn't required to do so, but you're just arguing that because the court usually does so, it should have done so here, even though we said it wasn't required to. It should have, but it knew the importance of doing so. And having done so would have been a major signal to this court that that's how it felt about its sentence. Shivers, which is cited by the government on page 14 of their supplemental brief, I think provides the answers. And what Shivers says is that in a situation where the district judge gives a downward-bearing sentence that happens to land into the range that the defendant wanted originally, if that variance is based on factors such as the characteristics of the defendant, this court can't tell and can't know whether after sentencing the district court judge would have given another downward variance at that time. And in particular, I point the court to footnote 4 of the Shivers case, which says... Even though the government agreed to the downward variance, maybe not to the extent that appellant wanted, but the government agreed to the downward variance. They agreed to a downward variance based on some factors. We thought a downward variance based on other factors were appropriate. So you're saying that even if... You're saying the government would have changed its mind somehow if we go back? I guess I'm not particularly concerned with what the government wanted. This is about what the district court would have done if the guidelines were corrected. And what it says, Shivers, is that the error is not harmless. Even though Shivers received a sentence that fell within the guideline range that would have applied, the district court could again rely on the history and characteristics of those below guideline sentences. And whether the district court is determined to do so is in that judge's discretion. Because the judge will have that discretion, this court can't know with certainty whether or not that's what Judge O242... The government has to prove with certainty that's what would happen. No, Gary, on that point, I don't think it's up to the judge. He actually did get the same sentence. It went down quite a bit. But you've got to get here first. You've got to even comment on this error. You've got to consider this error. Agreed. The best evidence, though, is that when we were back for a guidelines retroactivity question, he did give a lower sentence. You understand what I'm saying? I will. And so, as to the 1B, 1.2D issue, that provision, the guidelines say, the conviction on a count charged in a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant aspired to commit. The government says, we just looked at the indictment. It's perfectly clear that he was charged in a conspiracy to commit more than one offense. I agree, but it doesn't answer the question of how many and which ones. And that's what the court has to know. What about the language in the indictment that, I mean, at the same time, what about the language in the indictment that they said, including, quote, among other locations within the middle district of North Carolina and elsewhere? Even though it doesn't specifically include the exact locations that he was being held accountable for, it does say that among other locations within the middle district of North Carolina and elsewhere. Sure, I think that's insufficient. I think that's too broad. And I think the court has to look at what's charged in order to determine what's charged by a counter charge conspiracy. And so, when we look at the language of conspiracy, even though it has that broad language, which includes not just the middle district, but anywhere, you know, we're not going to see things where there's a confused vote, we're not going to see a CS court. If it actually had been a bot where four locations related to Company A, two locations associated with Company B, then the indictment subsequently charged seven top-back robberies, including the sixth at Panhandle North. The tricky part here is that if everyone agrees that my client didn't conspire to rob all six of those stores, it's going to be identified in the conspiracy recount. Everybody agrees that he didn't conspire to rob all seven of the subsequent accounts that identify his stores. Everybody also agrees that a bunch of two Company C stores identify the conspiracy recount, and he didn't conspire to rob either one of those. If they count all the robberies, I think it's a good thing that most of the robberies that are identified in the conspiracy recount don't contain any of those locations. They are individual appointments, not clients. Hi, this is Superworm. I am a developer for Aircraft 517, and I'm a consultant for Superworm, and I've been a viewer of your show for some time. Here's the thing. Nobody thought that you could possibly be responsible for all six of those events. Robbery locations are just a way of viewing them. It's a huge issue for all of the robbery locations. So, my question is, did factual evasion of the SRP include the robbery recounts in some of those projections? So, what factual evasion is, it's a kind of a one-pointed problem, right? The factual statement certainly does describe those robberies against other robberies. Yeah, that's what I'm talking about. The PSR. The factual statement of the PSR. It does describe those. It does. It's part of the plotting? It does, because it caused them the group of all the offenses. That was the objection. We didn't think they should have been part of the obvious conduct, because they weren't charged in the conspiracy count. There was no factual basis. So, the basis for holding it that way is a notice problem? Is that the argument? It's a notice, and it's a commentary problem. And even if the commentary doesn't apply, because the court determines there's no ambiguity here, we have to look at... We get to the commentarical cause. So... Ambiguous? I have two different arguments for that. The first is that, as I said... Are they consistent with each other, your two different arguments? No. Oh, good. All right. So, the first is that Moses... One is Moses, and one is the law. Have you read Bowler? The Bowler opinion? Yes, I have. Okay, maybe you could address that, because that's pregnant. Yes, I think the inter-circuit split on whether it's Stinson or whether it's Kaiser is still yet to play out. I know the petition for rehearing... But Kaiser and Stinson don't have to be really in conflict with each other. They don't. In a lot of cases, they're not, and they weren't in conflict. But this may be the case that Judge Niemeyer was talking about, where it actually makes a difference with which methodology you apply on the front end. Because this is a situation where the application note 4 tells you how to apply 1B1.2D. 1B1.2D says what we do once we know which offenses he conspired to commit, but it doesn't tell us how we determine. And one of the reasons... I have a pitch for Stinson and a pitch for Moses, and I recognize the panel, but 1B1.7 is a guideline. Well, I mean, it's the court. It's not just the panel. It's the law of the 4th Circuit. But go ahead. The president of the 4th Circuit. I don't know what to do with Moses. I understand why you don't know what to do with Moses. One answer to that may be Moses did not come after Stinson. It came before Kohler. It came after Gamble. And I've read everyone that had an opinion to say about the denial of petition for rehearing, and I appreciate all of it. But this is a case where the rules in terms of the president were clear. Of course, one of the scholars was over there. That is more a question of petition for rehearing with whether or not Moses and Gamble were directly conspiring. But the petition says it was denied. So that doesn't mean anything. The petition, then you turn to what the rules are. Who's heard it clear? And you look there. We don't have rules that are consistent in dealing with that. But yeah, you'll find certain splits all over the place. But we look to the first one. If you don't like it, you need to go unbothered and go to the Supreme Court. If you don't do that, you've got a case that you don't want. And it may well be, Your Honor, that Moses is wrongly decided as an outlier. Really, Kohler is the most recent. Statement from our court on the when Kaiser applies. And it's after Moses and Gamble. But could I go back to the question Chief Judge Young asked about no. Do you have an argument that the plea itself was not knowing? Okay. No. The standard of proof for sufficiency of the charge is different than what you get under the guidelines. This relates back to the argument before. So what's your notice argument then? Lack of notice. If they wanted to use robberies other than the ones, they should have put them in a conspiracy. They should have identified the stores that they believed he robbed. And they said he engaged in a conspiracy to rob the following stores. Instead, they listed a whole bunch of stores and then tried to add it. That's why I would think that you might have an argument that the plea itself was not known. Because your client didn't have notice of the government's plan to include these additional. But there are some that he did have knowledge of. Okay. And it's just one conspiracy. And he also pledged to a substantive fraud. And so the additional ones don't change the statute for the punishment range. It really is a guidelines question. And it's a particular question because it's a grouping guidelines offense. And the reason why it matters which ones and how many is that a grouping offense is different than, say, a controlled substance offense or a fraud offense where we simply aggregate all the harm. To properly calculate the guideline range, you have to know the specific robberies that occurred. And what the commentary does that's useful is it says there are going to be rare cases where we don't know how many. Application Note 3 says when the conviction establishes three, treat it as three conspiracy counts, one for each. But Application Note 4 says there are these rare cases where the plea, the plea agreement, the colloquy, and we don't know exactly which offense, which robberies are part of this conspiracy. And so in that case, how do we determine? Two things. One, it had to be alleged in the conspiracy count. And, two, then found by the district court judge by the stipend standard. My argument hangs on the first part of Application Note 4. It has to have been alleged in the conspiracy count. And that's why I detail what was alleged versus what wasn't alleged. And even if we didn't follow the commentary on that, which isn't interpreting the ambiguity, but it's doing what 1B1.7 says and explaining how to apply it, it makes sense. Because 1B1.2d is talking about a conviction by a count charged with a conspiracy. So we should be looking at the language of that conspiracy count to determine what was charged. What do you expect to respond to the second part? The second part was in relation to that. And it's interesting, right, because that's the second part of the application note that you just referred to. You have to inquire about it. There is sitting in the front or back finding proof. You don't have to do this. They're all alleged in the conspiracy count. And then you need to apply the second part of that commentary. So that's what that is. So just as Judge Osteen found, I think this case is exhibit A in response. There are cases where not all of the substantive properties are set forth either in the conspiracy count or in another substantive count. What was different about Roethlis and I believe the Ford case was that for each offense, the probation office wanted to use a grouping offense. They were somewhere in that indictment. Perhaps they weren't in the conspiracy count, and that's why I think Roethlis was wrongly decided. But they were somewhere in the indictment, and that's why the court there said there's not a notice problem. The challenge we have, Judge Sties, is that the two of these robberies aren't anywhere in this indictment. And that's the notice problem that is different from Roethlis and different from the Ford case. I do think that— I think what happened in this case was there were no factual basis early on. But later on, in a sense, people chose to essentially accept that the DSR factual basis thing. You know what I mean, right? I think he—I don't recall if he adopted a factual basis or if he simply agreed that there wasn't a factual basis to support— If there had been a factual basis that included— I believe so. I believe it would have solved the problem, and we would have been out of the world. We would have been strictly in application no. 3. And at least at the time when the judge was analyzing it, we would have been out of application no. 4 altogether. And I believe that would have solved it. But this was one of those cases where, because of the way it was played and because of how it proceeded, you could not look at this count and take his guilty plea and say which were the specific offenses so as to properly topic that. And because of that, we believe the government was limited by guidelines to what the charges of the conspiracy count. And to simply say in any other A or B company, anywhere they may exist, was not sufficiently particular because you have to specifically realize it's the guidelines. All right. Thank you. May it please the Court, Stephen M. Ford of the United States. This Court should affirm the district court in this case because the district court did exactly what Section 1B, 1.2B, called upon the district court to do. And as my friend, Mr. Jennifer Osteau, concedes, the defendant pled guilty to a conspiracy count in this case, and that conspiracy charged more than one offense. And given that, then it fell to the district court under the plain language of 1B, 1.2B, to determine which offenses the defendant conspired to commit. So what about the fact that two of the robberies that were considered as sentencing aren't anywhere mentioned in the indictment, at least not specifically mentioned? Well, I would say, Your Honor, they are mentioned generally. And I think that, obviously, you talk about specific references to specific locations, in the general allegations of the first couple paragraphs of the indictment. And those are incorporated in the conspiracy count, in the first paragraph of the conspiracy count. But then beyond that, the government alleges that those locations were among other locations in the Middle District and elsewhere. And to the extent that the Court is concerned about, notice, I will say this, this defendant can be convicted, catch fly, of conspiring to rob the MetroPCS store that's not listed specifically in the indictment, and the MetroPCS store that's in South Carolina that's not listed specifically in the indictment, based on this Court's prior precedent, the Supreme Court precedent, with regard to the specificity required in an allegation, in an indictment. And what are those cases? Well, Your Honor, the cases are, along the line, there is a very old case, but it's still good law, Cochran v. United States, 157 U.S. 286, Your Honor, that's an 1895 case from the Supreme Court. And that threat of what's discussed in there, Your Honor, follows all the way through to the present day. And it's captured in Rule 7 of the Federal Rules of Criminal Procedure with regard to what the government is required to charge in an indictment. And Rule 7 requires the government, Rule 7C, to provide a plain, concise, indefinite statement of the essential facts with regard to the charge of the case. The facts that constitute the offense charged. This Court has said, most recently, at least a long time ago, in the Preventing Case, which is a 1981 case. Are these cases that you're talking about in 1981? Your Honor, I don't believe that they are. I think that the notice pleading is something that undergirds all that the government does in terms of the indictments and the allegations. And so to the extent that the Court is concerned about it, I can say that this is black-letter law. This is not an issue that I think my colleague across the aisle is going to dispute. And I would say this. Well, who doesn't have really a fair opportunity to dispute it right now since these cases weren't in your brief. And it sounds like maybe you didn't provide them to them. Well, what I would say this, Your Honor, in terms of the notice in regards to this statute. If my friend across the aisle was truly surprised to see these Metro PCS scores show up in the present report, I would have expected to see something along the lines of surprise. And if the Court wants to see surprise with regard to what is this particular robbery doing in this particular case, the Court can look no further than Joint Appendix Pages 141 and 152. Because in the draft PSR, which is found in Joint Appendix 118 in the particular paragraphs there, paragraphs 30 through 35, the probation officer originally included a circle K robbery that they tried to assess unit points to the defendant. Well, it's not just surprise. Okay. Let me think about it. Because I think the position, I don't know. When sentencing comes around. One thing to believe is that when sentencing comes around, the PSR takes down one and divides it into three different locations, two of which have been mentioned in the indictment. And perhaps more important, this case, which is curious to me, there's no factual basis that's presented at the time of the guilty plea, for which the defendant concedes had it been, then we'd be okay with it. And yet, you know, the PSR comes around and it turns out. So, I mean, it comes down to, I don't know if you're going to remember this, but that's kind of what it sounds like to me. What is it? How do you know? I mean, you charge a robbery in company A, and that's it. And you get something in company B, that's it. Nobody puts a factual basis. You've got a date and time up there that can tie you in to, I guess, Greensboro or something like that. But you don't have a date and time as to Pennapolis and Suffolk. It wasn't there. Yet, the PSR shows up. It was additional. I have no doubt. We know this. But that's not the question. The question is in terms of how it's presented procedurally, you know, at that time. Why is it usual not to give a factual basis at the time of the plea? Sometimes we do, Your Honor. Sometimes in cases with this many conspirators, we don't always file a factual basis because sometimes some of those conspirators might wind up cooperating with the government. And we want to be able to talk to them about the allegations we've made in our indictment to determine. That's a choice you make, and that choice is sound. But if you make that choice, you can lose certain opportunities. And if you don't do that, you know, we're talking to some of the students about being in the military. Something like this. I see something like this. I say, this would never happen to folks. Because the problem is you probably would go through every last thing you did. You would go through every location that you were to be accepted. You know, the federal system would be up to that. But it seems to be somewhat problematic in cases like this, where it's time to be able to plead. It's a knowing plea. There's almost an argument here to set aside the plea, but I'm going to tell you that that wouldn't be an indictment. You set aside a plea and go back and say, okay, we'll start over. Then you're going to bring a factual basis in. There's not a need. So that would be no good. Really, it's the basis of the plea. That's really what's going on here. And now we have sentencing on it and using different locations, not mentioning indictments, no factual basis, and it pops up in a plea or something. It was a bronze interpretation in case law. You notice someone's more than just surprised and scared, when you're dealing with the process. Governor, my response to that would be, one, to say that the court did find a factual basis before starting this sentencing hearing. At the very outset, the court confirmed and the Joint Appendix page. One point six. And I would say that, John, because I think at this point it's incumbent upon the defendant to say before the court accepts this plea, before it takes the factual basis at the sentencing, because it is not a judgment of the defendant guilty by that point. It's incumbent upon the defendant to say, hey, wait a second, we didn't know that we were conspiring to rob these others. Well, Your Honor, I think not only did the government have an idea, the defendant did. And here's why. Because I'm thinking that. You're ready to do it. I'm not saying you should. But I'm just thinking, when you start out, the part is there. Other than that, you can go say company A, company B. You've got specific dates for speech. But then when the sentencing comes up, you pop in two other places there. My question is, was that in your mind or his mind? I mean, it could be. I'm not saying it can't. But it just seems like it's not the kind of thing that you might have been thinking. Certainly I wouldn't make a defense for it. So it kind of pops up. Your Honor, one thing again, that the court won't find in this record anywhere, is the notion that the defendant was surprised about these other two robbers. And the reason for that is because the government provided discovery. So the same discovery that the government provided information on. Well, I don't think it's described. The question is, was it described by the use of them? I mean, yeah, you believe in one thing. It was company A and company B. That's all you got. Which, when you think about it, all these robbers in company A and all these robbers in company B. Then you get the PSR. You separate three different robberies. Those three different things have been planted. And I don't think it was surprising that these happened. It's surprising they're being used as three instead of one. Well, their locations, Your Honor. There's no one locations of Metro PCS. Again, same company. Same company. But it's the company. And then the company is what leads to it. It doesn't matter what company. I mean, if you've got a robber in company M, you can be located in 10 different countries. I mean, you don't get 10 different jobs. But these were specific things. These individual robberies occurring. I understand that. But I'm just saying, in terms of the way these cases are handled, it seems to me, first of all, it seems to me, it's a separate field to me. It's the infrastructure basis. It's how we believe. The problem is already implicated. Life certainly could have been easier, Your Honor. I will tell the court something else that I think is significant. We haven't gotten to the application note. I'm not suggesting the court needs to get to the application note. But the district court, in this case, very experienced district judge, very careful district judge, asks not only the defense counsel, but the defendant himself, at the very outset of the sentencing in this case, is there any notion that the government doesn't have proof, Your Honor, reasonable doubt, that your client committed all four of these robberies? And my friend across the aisle says, no. And then the court doesn't have to, but the court does. Looks at the defendant, point blank, and says, in the defendant's page 45 and 46, I understand you don't object to the facts. And specifically, you don't object to my finding that if I'm called upon to do so, then the government can prove that it's beyond a reasonable doubt your participation in the commission of all robberies of the Wyandotte streets. Is that correct? And the defendant, unequivocally, straightforward, says, correct, sir. So there's no dispute that there's proof beyond any reasonable doubt that the defendant participated in these robberies. I don't know if that's exactly half of the case. In the first argument, I think it's a bit complicated. The guideline itself is pretty ambiguous, correct? But Mr. Young points out, that's just part two of your, you know, part of your argument. The defense has to be specifically led to your concerns, and if you do that, you're out of your confidence. That's not an unreasonable reason for that application. So why is he wrong about that? Well, I think he's wrong about that, Your Honor, because, again, what we have to allege, the conspiracy theory, to put the defendant on notice, is a plain, concise, indefinite statement of the essential facts constituted. That's the essential facts for a Harms Act conspiracy, merely a knowing agreement between two or more persons to interfere with Congress by robbery. That's what's alleged here. And so there is a knowing agreement alleged among these nine individuals. In your application, it talks about an object defense, right? So that seems to suggest a specific defense, not just a general description of it, but conspiracy. Well, I think there is a specific, there is a specific conspiracy theory, Your Honor. So if the court looks at the date page, we've got August 16th to September 15th, 2020. So it's already narrowed very far in scope. And then it discusses not writ large, robberies, commerce, writ large. It's talking about two corporations and their franchises and locations. Company A and Company B, Moose Mobile and Metro PCS. And then it's talking about furthermore that the conspiracy, the objects of the conspiracy were to unlawfully agreed to take and obtain property, including United States currency and wireless devices, from employees of Company A and Company B. That's squarely, in the plain language, plain text of the conspiracy account. And so right there, the defendant saw notice that the defendant is going to try, excuse me, the government is going to try to prove that he conspired to take money and cell phones by force from employees of Company A and Company B. Plural employees. Not one employee from Company A and one employee from Company B. And to boost the argument even better, there are seven locations that are listed in the indictment. Beyond that, again, getting back to this notion of note-splitting under Rule 7, if the defendant wants to know more, with more specificity, which places exactly do you think are wrong? Which places do you think exactly are not conspired? There is a mechanism under Rule 7F that this court has said that the defendant can avail himself. He can move for a bill of particulars and say exactly which locations do you say are not conspired to rob. And the government... So, in your view, the government did not even need to list any specific locations in the indictment for notice pleading to be sufficient because it had the date range, the companies, and then also locations within the Middle District and elsewhere. Middle District, North Carolina, and elsewhere. That would have been sufficient without naming the locations and then if the government, the defendant wanted locations, they would have asked for it. I think it would have been sufficient. And, again, he's not without the ability to challenge that. He can make a motion under Rule 12 and say, hey, listen, I have no idea what's going on here. Or, he can go one better and look at Rule 7 up and say, we're going to... Or look at the discovery. Or look at the discovery and in the discovery, he's going to see, Your Honor, because, yeah, the same discovery that the probation officer had when he used the PSR fund isn't the discovery that the defendant was provided. Let me ask you a few questions. Here's a question I'm curious about. Everybody's speaking to me about policing. But if you have an indictment that possesses more than account one, does it give a specific date and time? And, at court, the evidence showed guilt at one of the three places, but not the other two. Or, put it this way, would the jury be required to determine guilt as to robbery of all three places, or could it just be one? And how do you know it would've picked a particular one without the particularization of the location? Your Honor, I'm asking with regards to whether the conspiracy can't be viable if the jury only found one location. That's right. Your Honor, that is, in fact, the case. And I will tell the court that... The point I'm making here is that the abuse is for purposes of sentencing, that we conclude that there's reasonable doubt on all three locations, that a jury wouldn't have to find guilt on all three locations. They can do it on one or two. Is that correct? They could, Your Honor. They could find... How do you conclude, at the end, that, to try your best, there's a reasonable doubt basis and support for all three? Because that is needed in court indictment purposes or for trial purposes. Because that's what the district court is charged to do, Your Honor, in the 1B1.2D. And so, if I can, provide an example in another context. So, suppose somebody out here on Fayetteville Street goes and sells three grams of fentanyl today. And the government charges them with distribution of fentanyl on September the 10th, 2024. And they plead guilty to it. Defendant might think, my exposure is limited to those three grams of fentanyl I've sold. But under development conduct, conduct rules and guidelines, if he sold three grams of fentanyl to the same individual every day for the last year, the probation officer is going to assess his relevant conduct. And his guidelines range is going to be something attributable more like a thousand grams of fentanyl rather than three. That's simply the way the guidelines are set up. And that doesn't necessarily mean that anybody has to agree with them. It just means that that's the system that we have. And so, in this system, under 1B1.2D, it's the district court that's tasked with determining which offenses did this defendant commit as part of this procedure. Can you also speak to the harmless error? Your Honor, I think with regard to harmless error, I would agree with my friend, Clausey Arnold. It is certainly an uphill battle for the government. And it is one that has to be clear for the record. But I would say this, as the court can see at the end of the section here in this case, Joint Appendix 92, the court says, I really was not going to vary this case. In other words, the court was going to be stuck at 121 months. And the court only went down because the government came in and said, Your Honor, we think variance is appropriate. I didn't think before I went into this case that a variance was appropriate, but we think 108 months is the right number. And the court did give 108 months. When this case came back before the court for resentencing on a 3582 reduction, the court gave the defendant 100 months. So it went down because his criminal history points had gone down. And the court believed that, considered his post-defense conduct, considered the danger to the community that would be presented if he were to be released early, and went to 100 months. I will tell the court that that 100 months is exactly within the range that the defendant is requesting now. He prevails. He's still going to be in 84 to 105 months. And the court gave him 100 months at the 3582 resentence. So I'm not saying that there's an error in that 100 months. I'm saying if there's an error, it is honest. Because the judge is still going to wind up with that 100 months. I thought in the beginning you said that that would be a hard argument for the government to make because the sentencing court said I was not doing it there. I mean, it is. I will say that there is some sense of reading tea leaves and trying to figure out what the district court would do if there's error here. So if there is error here, is the government's position that it is harmless or not harmless? The government's position is that it is harmless. The sentence is still appropriate at 100 months because that's the guideline range that the defendant would wind up with if he were to be here. But the government would like the court of course to find that there is some chance that this court is going to be able to sentence him. I don't believe so, Your Honor. Given the record, the court is a million pounds. You've got to say another $20 million that's going to be harmless. There's a chance he can get it going. Don't you think that even if the defendant would like to have the opportunity to go more, would you say in August that he can go more? Well, I don't want to tell you what to do, but it's a reasonable attachment even to have gone here and gone out of his way to make sure that he wasn't having to struggle with this and he wasn't having to deal with other things in the industry right now. Was it $180? It was $180. And now it's what? Now, if the petticoat failed, it would be $84 to $105 less.  right now, where it stands is $100 to $125 would be a reduction in the criminal history points that the statute commission made in the Threats Act. But again, we would ask this court not to find the biggest court here, because if this court conscientiously found that he participated in four robberies, we would ask him to defer the district court on that basis. Thank you very much. Thank you, Your Honor. Just briefly, as to the severe harmlessness, it's not about the range. We don't ask who is he now in the range. It's the specific sentence. When the judge has done the same thing and the government has a proof of certainty that we've done the exact same sentence, then it doesn't win on that and it needs to go back for a re-sentencing. A couple points. We're not challenging the specificity of the indictment. But what is required under notice pleading under Rule 7 is different sometimes than what needs to be pled in account to get certain enhancements or adjustments under Chapter 3 for being too wide. You're saying that the plea is not given proper notice. He has no way to do that. No, Your Honor. I'm not challenging that at all. That's my point. That's what I'm saying. We've said it's sad to go back and start over. Not only did he plead a conspiracy, he pled to one of the substance accounts. Right? And so there's not a doubt that he knew at least that count into what was alleged in the conspiracy account what some of the offenses were. But there are cases where the guidelines say you need to look at what's actually charged because it's the offense of conviction not just relevant conduct. I know this happens in the gun guidelines. You look at the offense of conviction to determine how you can count points. That's what makes this different than the analogy about somebody selling drugs with 2D1.1 because that's a non-grouping offense. The guideline treats that conspiracy differently than it treats the conspiracy charged in this case. This is a groupable offense conspiracy. So you have to know how many and you have to know specifically which one because for each one you have to go through and calculate a specific offense level. You have to look at specific offense characteristics to know how many units to give under grouped. That's why it's important that the defendant have knowledge of what these are but that's also why the application though talks about the count charged in the   But then why would the defendant plead guilty with no factual basis knowing that? Well he certainly knew that he committed the substantive robbery charged in count 2 which he also pled guilty to and that was sufficient to make him guilty for a conspiracy. And that's all that a jury ever would have needed. That's Judge Wynn's question. Let's say you had an indictment that alleged 10 different robberies. All they need to believe is 1. I believe they have to be unanimous to ask about 1. And I think it would be a smart thing to give a special verdict asking for unanimity on that object. But there wasn't a doubt here about whether he was guilty of count 1. Absolutely not. The factual basis of the time he plead ultimately came out PSI. Could the defendant have withdrawn plead at that time? No. Of course yes he could have but he wouldn't have because he was guilty of count 1 and count 2. And he acknowledged that the factual basis that was there was included in his publication. That's correct. This is not so with fact 1. There's no objection. We've got the factual basis. He's not the act. There's not the act except the fact. So he's not the act.   I'm not   guilty of count 1. He's not  count 2. So this is not a fight about whether or not he's guilty of count 1 or count 2. It's about how the guidelines get applied. And when you look at the specific guidelines that are applicable to conspiracy for grouping offenses and you apply the application notes, it says that there are two requirements that the  has to go through. First, it must have  him in the conspiracy to count. If you don't apply it, you say it's unambiguous. I don't think so. This is a more challenging argument. The court would then be left without the guidance of application note 4 to determine which specific rules    would look at the count. The court should say A and B is not good enough. There are so many A's and so many B's. Yes, there's a time range,  it's any A and B is not sufficient. It's not    one conspiracy for the grouping rules to apply. Thank you very much. Thank you,  Mr.  I know you are court appointed. I'm grateful for your time. Thank you.
judges: Albert Diaz, James Andrew Wynn, Stephanie D. Thacker